[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is an appeal from the decision of the North Haven Planning and Zoning Commission denying the plaintiff's application for site plan approval for an affordable housing development at 194 Quinnipiac Avenue in the Town of North Haven, For the reasons stated hereinafter, the appeal is sustained with further relief granted.
Facts
The plaintiff, North Haven Opportunity for Affordable CT Page 1332 Housing, Inc., is a Connecticut non-stock corporation. It has a written agreement with St. Theresa's Church (Archdiocese of Hartford) for the purchase of the parcel at 194 Quinnipiac Avenue. The plaintiff has an option to purchase the property at 10 Louis Street (a part of the composite parcel) from the owner, Louis G. Bradanini. The property is located within the IL-30 zone, an industrial zoning district in the Town of North Haven.
The plaintiff made application to the defendant, North Haven Planning and Zoning Commission for site plan approval for a development containing 24 living units designated as affordable housing within the meaning of Connecticut General Statutes
Section 8-30g. Public hearing was held on the application. The application was denied on September 8, 1997.
The plaintiffs submitted a modified application on September 24, 1997. The modified application sought site plan approval for a development of 20 living units designated as affordable housing. After public hearing, the defendant denied this modified application on November 12, 1997. This appeal taken by the plaintiff seeks a reversal of the Commissioner's decision and approval of the modified application.
The parcel of property subject of this appeal is 4.845 acres or 211,046 square feet. The site plan contemplates 20 living units in four (4) buildings. The parcel is V-shaped, with frontage on Quinnipiac Avenue (State Route 103), Nettleton Avenue and James Street at its intersection with Clark Avenue. The site plan proposes 46 regular parking spaces and 4 handicap accessible spaces, for a total of 50 parking spaces. Each of the four buildings proposed is 4,200 square feet in size. As they are situated on the land, none of the four buildings abut or front on a town street. The application includes a landscaping and planting plan. All details of driveway and curbing, construction site, and lighting details, and surveys and water details were provided.
The Town's reasons for denial of the first application was ". . . to protect substantial public interest in health, safety or other matters, that such public interest clearly outweigh the need for affordable housing and that such public interests cannot be protected by reasonable changes to the housing project." (Return of Record, Mem. Dec. # P97-50, Item not numbered). The Town further stated "[t]his denial is based on the following concerns which implicate the public interests in health and CT Page 1333 safety:
(1) The sever density of the proposed project:
(2) the lack of playground or recreation area on the site: and
(3) the inadequacy of the parking plan for the site.
Pursuant to Connecticut General Statutes Section 8-30, the applicant filed a modification to which the applicant attempted to respond to these reasons for denial. The modified application:
(1) reduced the number of building's from 6 to 4;
(2) reduced the number of living units from 24 to 20;
(3) reduced the density to 4.2 living units per acre;
(4) include a recreation area, with recreational improvement not yet constructed, to be tailored to the needs of the inhabiting community;
(5) provides 50 parking spaces (46 regular and 4 handicap accessible). This computes one to two spaces for each dwelling unit and 1 visitor space for every 3 dwelling unit. This is 2.5 spaces per unit, an increase from the original application of 56 spaces for 24 units, or 2.33 spaces per unit;
(6) the roadway system was reduced from 35,500 square feet to 20,500 square feet;
(7) coverage was reduced from 10.7% to 8%;
(8) landscaping and land left in its natural state was increased to 74% from 65%;
(9) entrance was made from Queen Avenue with exit on Nettleton Avenue.
After public hearing, the Commission voted unanimously to deny the application. It referred to the reasons cited in the September 8, 1997 decision and further stated:
"It is the opinion of the Commission that the modified/amended proposal remains too dense a project for the size of the parcel on CT Page 1334 which the development is to be situated. The modified plan reduce the number of bedrooms only by 8, from 64 to 56.
"2. The Commission considers the modified parking areas to remain inadequate in the number of spaces made available to service the modified proposal.
"3. Although an open area was shown on the modified plan as a potential recreational area, the Commission continues to have safety concerns for the children expected to reside at this location, as no indication of what the recreational area would offer the children was shown or detailed.
"4. The Commission was concerned that the potential for future development of the properties abutting the subject parcel, along with an increase in heavy truck traffic associated with such development would impact upon the proposed project at is relates to the safety of the prospective residents."
From this decision, (embracing the reasoning of the decision on the original application) the plaintiff has appealed.
AGGRIEVEMENT
"[A]ggrievement must be established at the trial court. It is a question of fact for the trial court to determine. (Citations omitted.) Parcesepe v. Zoning Board of Appeals, 154 Conn. 46, 47
(1967); Primerica v. Planning Zoning Commission, 211 Conn. 85,93 (1989).
 "To be entitled to an appeal from a decision of planning or zoning authorities, appellant must allege and prove that they were aggrieved parties. They are required to establish that they were aggrieved by showing that they had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community and that they were specially and injuriously affected in their property or other legal interests. (Citations omitted.)" Gregorio v. Zoning Board of Appeals, 155 Conn. 422, 424-425 (1967).
On behalf of the plaintiff, Walter Mahon testified. He is the president of NHOAH, Inc., which is a Connecticut nonstock Corporation comprised of 7 North Haven Churches, 1 Hamden CT Page 1335 Church and 1 Hamden synagogue. NHOAH, Inc. has contracted to purchase the subject property from St. Therese's Church, Archdiocese of Hartford. NHOAH, Inc. has a written option to purchase the Bradanini property.
NHOAH, Inc. has a specific interest in the outcome of this litigation, since it desires to develop the affordable housing project subject of this appeal. The court finds that the plaintiff, NHOAH, Inc. is aggrieved.
Standard of Review
Initially, the court finds that this is an affordable housing appeal, within the meaning of Connecticut General Statutes
Section 8-30g et seq. The Return of Record includes the April 1997 report of the State Department of Economic and Community Development reflecting that the Town of North Haven is not exempt under Section 8-30g. The Commission does not contest this classification of the Town.
The standard of review in the statute provides: "Upon an appeal taken under subsection (b) of this section, the burden shall be on the Commission, to prove, based upon the evidence in the record compiled before such Commission that . . ."Connecticut General Statutes Section 8-30g (c).
The application, while for site plan approval, contemplates a residential use in an industrial zone. Therefore, the Commission was acting in dual capacity regarding the application. As a contemplated changed use, it was acting in its legislative capacity, to determine if the zone change for that parcel, was appropriate. The site plan review was an action which invoked its administrative duties. Kaufman v. Zoning Commission,232 Conn. 122, 150-151 (1995).
The Commission argues that because the application implicated a zone change for the subject parcels, Connecticut GeneralStatutes section 8-30g does not apply. Clearly, our Supreme Court rejected this contention in West Hartford Interfaith CoalitionInc. v. Town Council, 228 Conn. 498, 509 (1994). "In the absence of a single qualification limiting the definition of" affordable housing application "and in view of the" plain and ordinary "meaning of the word "any, "we construe the language of Section 8-30g to apply to every type of application filed with a commission in connection with an affordable housing proposal." CT Page 1336
The burden on the Commission is to show that ". . . the record before the [Commission] support [ed] the decision reached"; West Hartford Interfaith Coalition Inc. v. TownCounsel, supra [228 Conn.] 513; and that the Commission did not act "arbitrarily . . . illegally . . or in abuse of discretion." (Internal marks omitted.) Protect Hamden North Haven fromExcessive Traffic and Pollution, Inc. Planning and ZoningCommission, supra, 220 Conn. 543-544." Kaufman v. ZoningCommission, supra at 153 (1995).
Because the commission cites Kaufman for principles to the contrary, this court elucidates the analogous situation ofKaufman to the present fact pattern, by direct reference to the language of Kaufman (at p. 153).
In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in its "legislative" or "administrative" capacity. "The diseretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasijudicial function." (Internal quotation marks omitted.) Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 543, 600 A.2d 757 (1991); Malafronte v. Planning Zoning Board, 155 Conn. 205, 209, 230 A.2d 606
(1967). "Acting in such legislative capacity, the local [zoning] board is free to amend [or to refuse to amend] its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for [or the undesirability of] a change. . . .Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. . . ." (Citations omitted; internal quotation marks omitted.) Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission,
supra 543-44; Malafronte v. Planning Zoning Board,
supra, 208-209. "In contrast, when acting in an administrative capacity, a zoning commission's more CT Page 1337 limited function is to determine whether the applicant's proposed use is one which satisfies the standards set forth in the [existing] regulations and the statutes." (Emphasis added; internal quotation marks omitted). West Hartford Interfaith Coalition Inc. v. Town Council, supra, 228 Conn. 505-506 n. 10. In fulfilling its administrative function, a zoning commission is less concerned with the development of public policy than with the correct application of law to facts in the particular case.
After reviewing the traditional scope of review in "legislative" and "administrative" decision making by a commission, the Kaufman court goes on to consider the effect of an affordable housing appeal brought under 8-30g.
 "Nothing in the language, legislative history or policy of § 8-30g demonstrates an intent to apply the more stringent evidentiary standard derived from appeals of administrative zoning decisions to appeals from legislative zoning decisions. Section 8-30g specifies an evidentiary standard only as to one part of the commission's four part burden on appeal, requiring that "the decision . . . [b]e supported by sufficient evidence in the record. . . ." (Emphasis added.) General Statutes § 8-30g(c)(1); cf. General Statutes § 8-30g(c) (2) through (4) (not specifying evidentiary standard). Significantly, the legislative history suggests that the legislature chose to impose a "sufficient evidence" standard specifically because it thought that standard would be lower than the administrative "substantial evidence" standard."
It is this standard that the court applies to the present appeal.[1] The sufficient evidence standard requires the Commission to show that the record supports the decision substantial public interest were present in the consideration of placing this residential development in an industrial zone, and that it (the Commission) could have reasonably concluded that the denial of the application was necessary to protect those public interests. Ibid at 154.
The Commission has provided, in its unanimous decision, a collective statement of four reasons for the denial of the plaintiff's amended application. "[W]here a zoning commission has formally stated the reasons for its decision the court should not CT Page 1338 go behind that official collective statement of the Commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the Commission to reach the Commission's final collective decision. (Citations omitted)." DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970).
Discussion
The Commission argues that each one of its reasons for denial is supported in the record. It further argues that taken individually, and as a whole, the concerns raised by them in protecting the public interests in health and safety outweigh the public need for affordable housing.
The appellants, in the modified application, repositioned the buildings so that there would be open space for recreation. While they declined to place any specific recreation improvements at the site, at public hearing they told the Commission they would accept as a condition of approval any specific directions regarding improvements. A denial of an affordable housing application cannot stand where the public interest, here — recreation improvements on site — can be protected by reasonable changes to the affordable housing development. ConnecticutGeneral Statutes Section 8-30 (c)(i)(D). Parenthetically, the denial of the original application had only referenced the need for a playground or recreation area on site. That was provided in the modified application. There is no adequate basis in the record to support this ground for denial.
The appellants reduced the number of bedrooms from 64 to 56 in the modified application. The Commission's decision reflected the objection that this is still too intensified a use of the property.
The density of the proposed development is 4.2 units per acre. The Commission does not argue that the density will adversely affect the health of the community vis-a-vis water supply or related issues. The concerns about density are not articulated in the denial of the modified application. In the denial of the original application, the Commission articulated its reason:
"With respect to the density issue, it is true that the statute contemplates the possibility of density somewhat CT Page 1339 increased from the norm in an affordable housing proposal. However, the courts and our Town Plan of Development recognize that a development can be too dense for the size of the parcel on which the development is to be situated, resulting in adverse impacts upon the Town, its citizens and even the potential occupants of the development. A high density development can also have adverse impacts upon the environment, including wetlands such as those on the subject parcel. In fact, our Inland Wetlands Commission specifically recommended the downsizing of this development in its referral to our Commission. Given the proximity of the proposed development to other residential properties in this area, primarily single family residences, a lesser density of the proposed development would be less harmful to the public interests. The six multi-family building on 3+ acres of developable land which will have 56 bedrooms would be incompatible with established character of the surrounding residences and structures." (Return of Record, Memorandum of Decision, September 8, 1997)
The Quinnipiac Valley Health District (with several unrelated conditions) recommended approval of the original and modified application to the Inland Wetlands Commission. Other than those unrelated conditions, the Health District stated "no other significant adverse environmental health factors were noted." Correspondence 2/6/67; 5/22/97.
The modified application received a "Positive Referral to the Planning Zoning Commission" from the Inland Wetlands Commission. A positive referral is an approval (cf. "This approval is subject to compliance with any and all Inland Wetlands Regulations of the Town of North Haven." (6/5/97 letter p. 2). Return Record, Conn. Inland Wetlands Commission to Planning Zoning Commission, 6/5/97. The approval as sent on to the Planning Zoning Commission stated that the applicant should ". . . [c]onsider reducing the density of the development to minimize off-site, downstream storm water flow to the wetlands." It is important to note, then, that while this is a recommendation, the Inland Wetlands Commission, which is the agency charged with protecting the wetlands, saw no reason to deny the application based on density. It unanimously granted an approval.
In the first denial, the Commission reasoned that the density CT Page 1340 would be "incompatible with established character of the surrounding residences and structures." "The incompatibility of a proposed affordable housing development is not, per se, a sufficient reason to deny an affordable housing application. A review of the legislative history demonstrates that the legislature foresaw the situation wherein a developer would propose greater density than a given zone permitted." BarberinoRlty. Dev. V. P. Z. Comm., No. CV 93 0526841 S (9/23/94),1994 Ct. Sup. 9660, 9672. While located in an industrial zone, the property is surrounded by single family residences and a church. The residences are apparently all pre-existing nonconforming uses.
The Town Plan of Development (August, 1982) supports, in general, multi-family housing where there is access to shopping, schools, houses of worship, where there is adequate and safe traffic circulation, where there is a separation [topographic or other land use] for the single family residence, and the sites are adequate in size for a functional, attractive layout. The layout and architecture is not criticized in the decision of denial. The applicant's landscape plan provides a topographic buffer around the entire parcel from the abutting residences properties. The applicant's plan has rerouted traffic as recommended by the Town Engineer to provide for a safe and orderly flow of traffic. There is neighborhood access to community needs of shopping, houses of worship, etc. (cf. comments interspersed through the transcripts on record). Therefore, the Town's Plan of Development requirements to meet the Town's goal of providing multi-family housing to meet the Town's population needs. "Moderate density townhouses and garden apartments are the most appropriate types of multi-family housing for communities where a predominantly single-family residential character is to be maintained. Such housing can be most effectively blended with nearly single-family residential areas, is normally consistent with the level of services available in a community like North Haven, and is generally preferred by those seeking multi-family housing in the area." (Return Record, Town Plan of Development excerpt August 1982, p. 67).
Notwithstanding, the basis of denial of density affecting the character of the neighborhood, the application is entirely consistent with the Town Plan of Development. The density of the use in the modified application is 4.2 living units per acre. The parcel contains 4.84 acres. The living units contain a total of 56 bedrooms in the modified application. The record discloses CT Page 1341 that other multi-family developments have received approval in North Haven. Their density in each instance was greater than the applications 4.2 units per acre; ranging from 5.7 units per acre to 12 units per acre. The 5.7 units/acre development (Dale Brooke) is located in another heavily concentrated community with immediate proximity to an industrial zone. West HartfordInterfaith Coalition. Inc. v. Town Counsel, supra, 516. The court finds that the Commission has not sustained its burden of proof under § 8-30 (g) that a substantial public interest exists regarding issues of density that outweighs the substantial need for affordable housing.[2]
The modified application was also denied because the Commission considered the number of parking spaces available to service the development was inadequate. The modified proposal proposes 46 regular parking spaces and 5 handicap accessible spaces for the 20 dwelling units at the development. Essentially this computes to in excess of 2 spaces per dwelling unit. Mathematically it means 1 visitor space for every 3 dwelling unit (assuming two motor vehicles to each dwelling unit.) Further, the record discloses that the Applicant offered to include further spaces (5 to 10) if necessary to win approval from the Commission (RR Transcript Public Hearing November 10, 1997, p. 29).
The applicant offers compliance with the public need for adequate parking by providing reference to the Town of North Haven Zoning Regulation parking requirements as shown on the applicant's plan, p. S93. The off-street parking requirement for the IL-30 zone is 47 spaces (2 per unit plus 1 visitor's space per 3 units). This is exceeded inasmuch as 50 spaces are provided by the applicant.
The Commission has argued that the public interest regarding density and parking, together with the recreation issue, when taken together outweigh the public need for affordable housing. The property zone (IL-30) allows a maximum building average of 35%. The application buildings utilize only less than one-third of that. The landscaping necessary to provide a buffer for the abutting homes still results in less site alteration than permitted in this IL-30 zone. (RR Exhibit 8 @ 6-16-97 public hearing).
Nothing prevented the commission from attaching conditions of additional parking and specific recreation equipment (all of which the applicant agreed to) to address and lessen these public CT Page 1342 concerns. (RR Transcript, Public Hearing, November 10, 1997, p. 13). Connecticut General Statutes Section 8-30 (c)(1)(D). The concerns of traffic flow are referenced in the Barakos-Landino, Inc., Montowese Traffic Study. (RR. Exhibit X, 6-16-97 Public Hearing). This study addressed an entire region and was not specific to this plan. The recommendations based on anticipated growth did not show anticipated traffic congestion at the James Street, Louis Street, Nettleton Avenue, Quinnipiac Avenue intersection where this property is located. Most of the congestion in this section of town was to the east of this parcel. Developments far more significant than this one in regard to traffic and density were under consideration and would impact traffic (a total of 244 homes proposed and 180,000 square foot industrial building proposed here). (Id. Return Record, p. 14.) This traffic study provided no substantial basis for the Commission to concern itself with the traffic or density from there 20 proposed living units.
The Commission, finally, rejected the modified Application because it was "concerned that the potential for future development" of the abutting properties, with their associated "heavy truck traffic" would "impact upon the proposed project as it relates to the safety of the prospective residents." There is absolutely nothing in the record to support this concern. Nothing was put before the commission by itself or opponents to the application regarding traffic, construction, or any future use of abutting properties. Indeed, Connecticut General Statutes
Section 8-30g (c) contemplates the placement of affordable housing in an industrially zoned area. As with any other basis for a denial, there must be a basis in the record to support it. Possible harm is not a sufficient basis for denial. It must be definite or reasonably likely to occur. Protect Hamden/North Haven. . . v.Commission, supra, at p. 548.
This court concludes that the Commission failed to establish that "substantial public interests were implicated by this application". Further, the Commission has failed to satisfy its burden "establishing that, on the basis of the record, it reasonably would have concluded that the decision to deny [this application] was necessary," Kaufman v. Zoning Commission,232 Conn. 122, 154 (1995) to "protect substantial public interest in healthy, safety or other matters." Connecticut General Statutes
Section 8-30g(c). Further, the court finds that the public interests that were raised were far outweighed by the substantial need for affordable housing. CT Page 1343
The court sustains the appeal of the decision of the Commission on the September 24, 1997 modified application, without modification or revision. The defendant Commission is directed to administratively issue all approvals necessary from it for said plan.
_________________ MUNRO, J.