## HOMART DEVELOPMENT COMPANY *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WATERTOWN ET AL.
### (9967)

LAVERY, LANDAU and CRETELLA, Js.

Argued September 23—decision released December 10, 1991

*Karen P. Blado,* with whom, on the brief, was *Alyce L. Raboy,* for the appellant (plaintiff).

*Thomas P. Byrne,* for the appellees (defendants).

CRETELLA, J. This appeal arises from a judgment of the trial court dismissing the plaintiff developer's

appeal from the denial of its zone change application by the defendant planning and zoning commission. The plaintiff submitted the application in order to have certain land in Watertown redesignated as a Planned Regional Shopping District (PRSD) zone, pursuant to the town's zoning regulations, as a precedent to the construction of the proposed Watertown Mall. The plaintiff argues that the trial court should not have upheld the action of the commission, claiming that it was illegal, arbitrary and an abuse of discretion for the commission to deny the zone change application on the basis of its desire to amend the PRSD regulations in the future. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of this appeal. On August 7, 1989, the commission amended its zoning regulations to provide for a PRSD consisting of a minimum area of 100 acres upon initial creation. At that time, no areas were so designated on the Watertown zoning map. On August 23, 1989, the plaintiff applied for an amendment to the Watertown zoning map, seeking to change approximately 162 acres from various industrial zone designations to a PRSD zone. Public hearings were held on the application. On January 24, 1990, the commission voted, by a four to three margin, to deny the plaintiff's application. The reason articulated by the commission for its denial was that it wanted to "tighten up" the PRSD regulations before applying them to a particular parcel of land so that the commission might retain greater control over development in PRSD zones.

Thereafter, the plaintiff appealed to the trial court seeking a reversal of the denial of its application for a zone change. After the trial court dismissed the appeal, we granted the plaintiff's petition for certification to appeal to this court.

The plaintiff argues that the commission's denial of the application was improper because its reason for the denial, as stated in the record, was its desire to change the PRSD regulations in the future to give the commission more control over development in PRSD zones. The plaintiff argues that this (1) amounts to an unauthorized, retroactive moratorium on the consideration of PRSD zone applications, (2) is not among the criteria specified in General Statutes § 8-2 that may be considered by a zoning authority in adopting regulations and setting district boundaries, and (3) conflicts with the requirements of General Statutes § 8-2h[1] to apply the then existing zoning regulations to an application before a zoning authority. The plaintiff further argues that, because the commission failed to find that the plaintiff's proposal did not comply with the PRSD regulations, the commission's action was arbitrary and an abuse of discretion and the plaintiff's application must be granted. We do not agree.

The PRSD zone at issue here is a form of what is commonly referred to as a "floating zone." "A floating zone is a special detailed use district of undetermined location in which the proposed kind, size and form of structures must be preapproved. It is legislatively predeemed compatible with the area in which it eventually locates if specified standards are met and the particular application is not unreasonable. . . . It differs from the traditional 'Euclidean' zone in that it has no defined boundaries and is said to 'float' over the

---

[1] General Statutes § 8-2h (a) provides: "An application filed with a zoning commission, planning and zoning commission, zoning board of appeals or agency exercising zoning authority of a town, city or borough which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations or the boundaries of zoning districts of such town, city or borough taking effect after the filing of such application."

entire area where it may eventually be established." (Citations omitted.) *Sheridan* v. *Planning Board,* 159 Conn. 1, 16, 266 A.2d 396 (1969); see also *Pleasant Valley Neighborhood Assn.* v. *Planning & Zoning Commission,* 15 Conn. App. 110, 114–15, 543 A.2d 296 (1988).

"[W]hen a zoning board grants an application requesting it to apply a floating zone to a particular property, it alters the zone boundaries of the area by carving a *new zone* out of an existing one." (Emphasis added.) *Sheridan* v. *Planning Board,* supra, 17. Accordingly, an application to apply a floating zone to a particular property, like the one at issue in this appeal, is a request for a zone change. *Schwartz* v. *Town Plan & Zoning Commission,* 168 Conn. 20, 24, 357 A.2d 495 (1975); *Pleasant Valley Neighborhood Assn.* v. *Planning & Zoning Commission,* supra. Our courts are loath to overturn a decision by a zoning authority denying a requested zone change. See, e.g., *Goldfeld* v. *Planning & Zoning Commission,* 3 Conn. App. 172, 177–78, 486 A.2d 646 (1985). "Only under certain circumstances, where the classification is found to be unjust, confiscatory or unconstitutional and the reasons for such a change are unusual and compelling, will the courts reverse the authority's refusal to grant an application for a change of zone on the ground that the existing classification is found to be unjustified." *Cascio* v. *Town Council,* 158 Conn. 111, 114, 256 A.2d 685 (1969).

Our Supreme Court's comparison of a zoning authority's action in regard to a floating zone with its power to grant special exceptions in *Sheridan* v. *Planning Board,* supra, underscores the wide discretion afforded to a zoning authority when passing on a request to designate land as part of the floating zone. "While the concept of a floating zone is similar to the established power of a zoning board to grant special exceptions, the two types of regulation may be distinguished. The special exception is the product of administrative action, while the floating zone is the product

of legislative action. . . . Further, if a landowner meets the conditions set forth for a special exception, the board is bound to grant one, but in the case of a floating zone discretion is maintained and additional limitations may be imposed—more control is retained by the zoning board because it is acting legislatively." (Citation omitted.) Id., 16.

A local zoning authority acting within its legislative capacity is endowed with the freedom to act *or not to act* as it deems appropriate to meet the needs and demands of the body politic, as it determines those needs and demands. "Balancing the preservation of the status quo with the reasonable pressures for change due to the growth in population and the onslaught of business needs and community requirements is a function of zoning which must best be resolved by the duly authorized legislative municipal body . . . ." *Jablon* v. *Town Planning & Zoning Commission,* 157 Conn. 434, 443, 254 A.2d 914 (1969). Thus, our Supreme Court has observed that when acting in its legislative capacity to enact or amend its regulations, a local zoning authority "must therefore be free to modify its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . A less strict rule would require the court to exercise a legislative judgment." (Citations omitted.) *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 209, 230 A.2d 606 (1967); see *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 164, 479 A.2d 801 (1984); *Central Bank for Savings* v. *Planning & Zoning Commission,* 13 Conn. App. 448, 453, 537 A.2d 510 (1988). This broad legislative discretion applicable to

the approval of a zone change is equally applicable to the denial of a requested zone change, and will not be disturbed on appeal unless the zoning authority has acted illegally or arbitrarily and has thus abused the discretion vested in it. *Cascio* v. *Town Council,* supra; *Fenn* v. *Planning & Zoning Commission,* 24 Conn. App. 430, 434–35, 589 A.2d 5, cert. denied, 219 Conn. 908, 593 A.2d 133 (1991); *Goldfeld* v. *Planning & Zoning Commission,* supra, 177–78; *Coastal Suburban Builders, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 489, 492, 479 A.2d 1239 (1984).

The plaintiff assumes that if its proposed use of the land in question met all of the requirements of the PRSD regulations, then the commission was bound to grant the application for a zone change. This assumption, however, is fundamentally flawed. The inclusion of a floating zone within a town's comprehensive zoning regulations does not alter the basic fact that when passing on an application to apply a floating zone, the zoning authority continues to act legislatively. *Sheridan* v. *Planning Board,* supra, 16. Nothing in our case law concerning the floating zone concept even remotely suggests that a zoning authority cannot refuse to apply a floating zone to a particular piece of property simply because the applicant has complied with all of the requirements of the regulations establishing the floating zone. By establishing such zones, the zoning authority has not thereby ceded any of its broad authority to exercise its legislative judgment with respect to the competing needs and demands presented by a request for a zone reclassification.

This reasoning leads us to conclude that the plaintiff's claims that the denial of its application either amounts to an unauthorized, retroactive moratorium on the consideration of PRSD zone applications or conflicts with the requirements of General Statutes § 8-2h are without merit. First, no moratorium is at issue here.

The commission denied the plaintiff's application for a specific reason which we evaluate in light of the evidence before the commission and in the context of the substantial discretion afforded to a zoning commission acting in its legislative capacity. Second, because an application to apply a floating zone is a request to change the boundaries of existing zoning districts, the mandate of § 8-2h cannot logically apply to such action. The provisions of § 8-2h; see footnote 1, supra; are directed at situations where an application is filed with a zoning authority that seeks to make use of land in a manner permitted under regulations existing at the time the application is filed. In those circumstances, § 8-2h requires the zoning authority, *acting in its administrative capacity,* to process the application in accordance with the regulations in effect at the time the application is filed. Nothing in the language or legislative history of Public Acts 1989, No. 89-311, which enacted § 8-2h, suggests that it was intended to require the approval of requests for zone reclassification or otherwise to diminish the *legislative capacity* of a zoning authority with respect to such requests.

At oral argument, the parties informed us that Watertown's PRSD regulations were repealed subsequent to the commission's action which gave rise to this appeal. Although we have concluded that § 8-2h is not applicable to this appeal, we do not find this appeal to be moot pursuant to *McCallum* v. *Inland Wetlands Commission,* 196 Conn. 218, 492 A.2d 508 (1985). There, it was held that the zoning law or regulation in effect at the time of the decision of a court is controlling, and that that appeal was therefore moot because a recent change in local zoning regulations precluded the applicant from obtaining the relief he originally sought. *McCallum,* however, did not involve an application for a zone change. Because shopping centers remain a permitted use in all business districts; Water-

town Zoning Regs., art. III, § 33; and because the plaintiff can still seek a zone change; id., art. VIII, § 81; the repeal of the PRSD regulations does not preclude the plaintiff from obtaining the relief it seeks.

We now examine the record of the proceedings before the zoning commission. When we are required to review a decision made by a zoning commission in its legislative capacity, "it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." *Primerica* v. *Planning & Zoning Commission,* 211 Conn. 85, 96, 558 A.2d 646 (1989); *Calandro* v. *Zoning Commission,* 176 Conn. 439, 440, 408 A.2d 229 (1979); see *Fenn* v. *Planning & Zoning Commission,* supra, 434–35. This often repeated standard of judicial review applicable to the legislative actions of local zoning authorities is but an application of the well settled principle that when municipal legislative bodies "are acting within the limits of the formal powers conferred upon them, and in due form of law, the rights of courts to supervise, review or restrain them is necessarily exceedingly limited." *LaTorre* v. *Hartford,* 167 Conn. 1, 8–9, 355 A.2d 101 (1974); *McAdam* v. *Sheldon,* 153 Conn. 278, 281, 216 A.2d 193 (1965); *Whitney* v. *New Haven,* 58 Conn. 450, 457, 20 A. 666 (1890). "[A]ny broader rule would potentially involve the courts in the review and revision of many, if not all, major controversial decisions of the legislative . . . authorities of a municipality." *McAdam* v. *Sheldon,* supra.

The record here reveals that there was voluminous evidence before the commission as a result of the hear-

ings conducted on six days. Substantial evidence was offered by the plaintiff and others in support of the application, and substantial evidence was also offered by residents of the area and others in opposition to the application. The commission had the task of weighing that evidence and reaching a conclusion on the merits of the plaintiff's application. The evidence before the commission supported its conclusion that the existing regulations permitting the establishment of a PRSD zone were inadequate to protect the legitimate interests of the town of Watertown and its citizens as they related to land identified by the plaintiff.

From the record before us, then, it appears that the judgment of the commission to deny the plaintiff's application for a zone change "has been reasonably and fairly exercised and honestly arrived at after giving proper consideration to the public welfare in evaluating the needs of [Watertown] in relation to the appropriate use of land contained therein." *Sheridan* v. *Planning Board*, supra, 21. To conclude otherwise would undermine the flexibility inherent in the floating zone concept and would require us to substitute our judgment for that of the commission. We will do neither.

The judgment is affirmed.

In this opinion the other judges concurred.