[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a zoning appeal, filed pursuant to General Statutes § 8-8, by the plaintiffs, Thurston Greene and Basil Keiser, who claim that the Wilton Planning and Zoning Commission [hereinafter "Commission"] erred in its decision granting Marc Gueron's application to amend the comprehensive plan and for a change of zone regarding property at 30 Cannon Road in the Town of Wilton. The commission has authority to act pursuant to General Statutes § 8-3. The owner of the subject property and applicant is Marc Gueron. (Return of Record [ROR], Item 1). The plaintiff, Thurston Greene, as trustee, owns a parcel of land that adjoins the subject property and the other plaintiff, Basil Keiser, is the beneficial owner of this property. (ROR, Item 19 pt., 2, p. 84-1). Gueron submitted an application to amend the comprehensive plan and for a change of zone to the commission dated April 6, 1992 in order to reconfigure the zoning of five lots. (ROR, Item 1). Prior to Gueron's application, the property at 30 Cannon Road, also known as Cannon Crossing, had been comprised of five lots that totaled 7.8 acres. (ROR, Item 1, p. 4). Lots one and five were zoned for General Business [hereinafter GB Zone]. Lot two, the largest, consisting of approximately five acres, was zoned R-2A, a residential zone. (ROR, Item 1, p. 4). Lot four had been zoned for residential business [hereinafter RB Zone]. (ROR, Item 1, p. 4).
On June 8, 1992 and June 22, 1992, the commission held hearings concerning the application. (ROR, Item 19, Part 1 and 2). The commission approved changes on June 29, 1992 but did not formally state the reasons for its approval. (ROR, Item 14). After the commission's approval of Gueron's applications, lot one remained unchanged. Lots two, four and five were redefined to create a new lot two zoned as an RB zone and a new lot three zoned CT Page 7314 as an R-2A zone. (ROR, Item 1). The new property lines and zone lines made all of the property west of the Norwalk River residential (lot 3) and all of the property west of the Norwalk River business zoned (lots 1 and 2). (ROR, Item 1).
The plaintiffs appeal from the commission's decision granting the amendment to the comprehensive plan and the change of zone.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202
(1988). These provisions are mandatory and jurisdictional; failure to comply may subject the appeal to dismissal. Id.
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planningand Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). On November 17, 1993 the court, Dean J., made a finding of aggrievement on the record.
An aggrieved party may take an appeal to the Superior Court "within fifteen days from the date when notice of such decision was published in a newspaper." General Statutes § 8-8(b). In the present case, notice of the commission's decision was published in the Wilton News Review on July 8, 1992. On July 23, 1992, the plaintiffs commenced this appeal when the sheriff served process on the chairman of the commission, the Wilton Town Clerk and Marc Gueron. The plaintiff has complied with General Statutes § 8-8(b).
"[A] local zoning authority, in enacting or amending its regulations, acts in a legislative rather than an administrative capacity." (Emphasis in original.) Parks v. Planning and ZoningCommission, 178 Conn. 657, 660, 425 A.2d (1979). A zoning commission "is endowed with a liberal discretion, and its action is subject to review by the court only to determine whether it was unreasonable, arbitrary or illegal." Schwartz v. Planning andZoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). Where the zoning authority has not provided the reasons for its decision, the court must review the record to determine whether the decision is supported thereby. A.P. W. Holding Corp. v. Planningand Zoning Board, 167 Conn. 182, 186, 355 A.2d 91 (1974). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record." Primericav. Planning and Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646
CT Page 7315 (1989).
"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Citations omitted.) Lamb v. Burns, 202 Conn. 158, 172,520 A.2d 190 (1987). The "court will not consider issues which re [are] brought tot he [to the] court's attention for the first time by way of the appellant's brief." Robinson v. ITT Continental Baking Co.,2 Conn. App. 308, 314, 478 A.2d 265 (1984).
In their brief, the plaintiffs argue that the commission acted in an illegal, arbitrary manner and abused its discretion. The plaintiffs argue that the commission's approval did not conform to the comprehensive plan because the commission rezoned land to residential use where there was no evidence that such use was appropriate for the site. The plaintiffs argue that the rezoning was illegal and thus violative of the comprehensive plan because it created a nonconforming lot in a residential zone in violation of § 29-7 of the Wilton Town Code because the lot did not meet the town's minimum dimension requirements of §§ 20-10.F and 29-27. The plaintiffs also argue that the only reason for granting the zone change was because it complied with the newly amended plan and that in granting the application there was no benefit to the community.
The plaintiffs argue that the record does not support the amendment to the comprehensive plan or the change of zone, particularly as to the traffic safety and congestion issues that are provided for in § 29-1F of the Wilton Town Code. In addition to the traffic issues, the plaintiffs also argue in their brief that the record does not support the commission's decision because the commission failed to give appropriate weight to the recommendations of the coordinate municipal agencies.
Finally, the plaintiffs argue that the commission's decision constitutes impermissible spot zoning because the change does not permit a reasonable and logical development of the comprehensive plan. The plaintiffs' claim of spot zoning was not raised in the complaint, and thus will not be considered by the court. SeeRobinson . [v.] ITT Continental Baking Co., supra.
A change of zone must be in accord with the comprehensive plan and must be related to the normal police powers enumerated in General Statutes § 8-2. First Hartford Realty Corporation v.Planning and Zoning Commission, 165 Conn. 533, 541, 338 A.2d 490
(1973). The requirement that a zone change be in accord with the CT Page 7316 comprehensive plan "is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community." First Hartford Realty Co., supra, 541.
The comprehensive plan has been defined as "a general plan to control and direct the use and development of property in a municipality or in a large part thereof by dividing it into districts according to the present and potential use of the properties." Damick v. Planning and Zoning Commission of the Townof Southington, 158 Conn. 78, 83, 256 A.2d (1969). Where a comprehensive zoning plan has not been formally adopted by the town, it can be found in the zoning regulations and zoning map.First Hartford Realty Corp. , supra, 542.
The record reveals that lot two originally had been zoned as a general business zone but was rezoned at the request of a previous owner apparently for tax purposes. (ROR, Item 19, Pt. 1, p. 7). The fact that it previously had been a business zone demonstrates that it was not inappropriate for the commission to grant the change of zone. The record reveals that the approved application results in a more compatible and harmonious use of Cannon Crossing in relation to the surrounding area because by granting the application, all business zoning of Cannon Crossing was removed from the east side of the Norwalk River and relocated to the west side of the River. (ROR, Item 1, pp. 2-6). Furthermore, the record reveals that the community was benefitted [benefited] by the conservation easement that Gueron created because it would ensure a buffer zone that would restrict any development in perpetuity. (ROR, Item 13).
Moreover, a private individual may receive an incidental benefit from rezoning. Coyle v. Planning and Zoning Commission ofWest Haven, 162 Conn. 233, 236, 294 A.2d 277 (1972). The commission's action conforms to the comprehensive plan because there is evidence in the record that the rezoning and amendment were appropriate for the site. The commission could have found there were benefits to the community because the change resulted in a reduction of commercial zoning east of the river and the new conservation easement that was created by Gueron would serve as a buffer to residential properties east of the river. (ROR, Item 1, p. 2).
The plaintiffs argue that the new lot three, on the east side of the Norwalk River, violates the comprehensive plan because it does not comply with the minimum dimension requirements of the CT Page 7317 Wilton Town Code §§ 29-10.F and 29-7. Wilton Town Code § 27-7
states in pertinent part: "Except as hereinafter provided, no land. . . shall hereafter be used . . . except in conformity with these regulations." Nevertheless,
 [t]he mere fact that the inclusion of the property in a residence zone rather than a commercial zone might make its use more unsuitable is not of controlling significance. . . . The commission need only act in reasonable manner and in accordance with a comprehensive plan which serves the public interest in the zoning development of the community.
State National Bank v. Planning and Zoning Commission, 165 Conn. 99,103, 239 A.2d 528 (1968).
The record reveals that the lot was specifically created so that it could not be developed and instead, it would act as a buffer to the adjoining residential properties. (ROR, Item 1, p. 2). Gueron ensured that it would not be developed by granting the Wilton land trust a conservation easement. (ROR, Item 13). the new residential lot does not violate the Wilton Town Code because the minimum dimension requirements would come into play only if an attempt were made to develop this lot. The commission's staff report dated June 4, 1992 suggested that "the proposed configuration of the proposed residential lot would not be permissible as a building lot. A possible solution may include the conveyance of the proposed residential piece as `Open Space in Perpetuity' to the Town of Wilton or an acceptable nonprofit land conservation organization." (Emphasis added.) (ROR, Item 5, p. 2). Gueron and the commission have ensured that the land would not be developed by use of the conservation easement, therefore the commission's decision is in accord with the comprehensive plan since the land cannot be developed in violation of the minimum dimension requirements.
Plaintiff's argue that the commission's decision was not reasonably supported by the record because the traffic study submitted by Gueron was not sufficient. General Statutes § 8-2
specifically states that zoning regulations "shall be designed to lessen congestion in the streets." "A zoning authority has broad discretion to deny a zone change based on traffic problems. Stilesv. Town Counsel, 159 Conn. 212, 218, 219, [268 A.2d 395] (1970)."Rinaldi v. Zoning and Planning Commission, 5 CSCR 602, 604 (June 29, 1990, Corradino, J.). CT Page 7318
The record reveals that the traffic issues were a primary concern regarding these applications and were raised by the comments of William Wiley of the Department of Public Works. (ROR, Item 3). Specifically, Wiley's concerns were that the driveway sight line along Cannon Road is limited, that in his opinion the traffic study was not long enough to establish the peak of return traffic and that the driveway serving the rear parcel of Cannon Crossing is not wide enough to provide for two-way traffic. (ROR, Item 3).
At the public hearing on June 22, 1992, Gueron's expert, Allen Davis, a professional engineer, testified about the traffic issues. (ROR, Item 19, Pt. 2). Davis testified that Cannon Road is a very lightly traveled road because of the alternate roads in the area and that the peak hour observed was on a Tuesday night between 4:30-5:30, when 69 vehicles used the road. (ROR, Item 19, Pt. 2, pp. 7-8). Davis also testified that there was no congestion near Cannon Crossing, its driveway was inactive and thus, there was no conflict between cars leaving the property and the rush hour traffic. (ROR, Item 19, Pt. 2, pp. 7-8).
Davis further testified that the peak of parking activity for Cannon Crossing was between 1:30 and 2:30 on Saturdays, when there were between twenty and thirty cars parked on the property. (ROR, Item 19, Pt. 2, p. 9). He testified that the average "turnover rate" for shoppers was about one-half hour and thus there would be between forty and sixty cars entering and exiting during the peak period. (ROR, Item 19, Pt. 2, p. 10). Davis testified that even if this rate were tripled, it would still be comparable or less than many intersections in Wilton, for example route seven, which is used by about 1,000 vehicles per hour during the peak period. (ROR, Item 19, Pt. 2, p. 11).
As part of his investigation Davis checked the accident records for Cannon Road at the juncture of the railroad crossing and the driveway at Cannon Crossing and he ascertained that there had been no accidents during the last three years either at the crossing or driveway. (ROR, Item 19, Pt. 2, p. 11). Although his research demonstrated that there was no established safety problem, Davis testified that there could be benefits to the town in a future site plan application. (ROR, Item 19, Pt. 2, p. 12). He testified that there could be an improvement of the internal circulation in the existing Cannon Crossing and an improvement of the sight line of the existing driveway by raising it one foot, so CT Page 7319 that you could see over the crossing. (ROR, Item 19, Pt. 2, p. 12).
The commission's decision is adequately supported by the record regarding the traffic issues because the plaintiffs' expert addressed the concerns of William Wiley and demonstrated in his testimony that if Gueron's applications were granted there would not be additional congestion, but rather that there would be an improvement in internal circulation upon completion of the site plan.
With respect to the plaintiffs' remaining argument concerning whether the commission gave appropriate weight to the recommendations of the coordinate municipal agencies, is the determination of the weight to be given to the evidence before it is within the province of the commission. "The credibility of witnesses and the determination of issues of fact are matters solely within the province of the agency." Homart Development Co.v. Planning and Zoning Commission, 26 Conn. App. 212, 219,600 A.2d 13 (1991). Accordingly, since the record contains evidence sufficient to support the granting of Gueron's applications, the court will not substitute its judgment for that of the commission regarding the weight to be given the recommendations of the coordinate municipal agencies.
The record supports the commission's approval of Gueron's application to amend the comprehensive plan and for a change of zone. Accordingly, the plaintiffs' appeal is dismissed.
DEAN, J.