[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONADMINISTRATIVE APPEAL, FEBRUARY 5, 1998
The plaintiff, 778 Long Ridge Road Associates Limited Partnership, appeals from a decision of the defendant, the Zoning Board of the City of Stamford (Board), denying the plaintiff's application for a change in the zoning map of the City of Stamford.
The plaintiff alleges that it is the owner in fee simple of the property and improvements thereon located at 778 Long Ridge Road in the City of Stamford. (Appeal, dated July 23, 1996, ¶ 1). The plaintiff's property is zoned R-20. (Appeal, ¶ 2). The R-20 zone district permits use as of right for a single family detached dwelling on a minimum lot area of 20,000 square feet. (Stamford Zoning Regs., art. 3, § 4, AA-2.4,; Appeal, ¶ 3). Other uses are permitted in the R-20 zone by special exception, including a child day care center and a clinic. (Appeal, ¶ 4; Supp. Return of Record [ROR], Item 20: comparative analysis of various zone).
By application dated March 12, 1996, the plaintiff submitted a request for a change in the zoning map of Stamford as it applied to plaintiff's property. (ROR, Item 3: Application for Change in Zoning Map). The plaintiff sought a change from R-20 zoning to R-10 zoning. (ROR, Item 3).[1]
Such a zone change would allow the plaintiff to request that the Zoning Board of Appeals (ZBA) approve approximately 17,800 square feet of additional building development instead of only approximately 9,800 square feet which the R-20 zone district allows the plaintiff to seek. (Appeal, CT Page 4326 ¶ 9(k); ROR, Item 13: Transcript of Zoning Board Public Hearing p. 4-5; ROR, Item 9: Memo from N. Cole, Principal Planner to Zoning Board, dated July 1, 1996). Under the new zone district the special exception uses would remain the same. (Supp. ROR, Item 20).
On July 8, 1996, the Board conducted a public hearing on the plaintiff's application. (ROR, Item 12: Minutes of Zoning Board Public Hearing, dated July 8, 1996; Item 13: Transcript of Zoning Board Public Hearing, dated July 8, 1996).[2] After discussion of the application, two Board members voted to approve the application, and three members opposed it; therefore, the application was denied. (ROR, Item 11: Minutes of Zoning Board Regular Meeting, dated July 8, 1996).[3] Notice of the Board's was published in the Advocate on July 12, 1996. (ROR, Item 14: Legal Notice published July 12, 1996).
The plaintiff appeals from the Board's denial of its, application to change the zone district on its property located at 778 Long Ridge Road from R-20 to R-10. The plaintiff alleges that the Board's decision deprives the plaintiff "of a reasonable use of its property." (Appeal, ¶ 12). The plaintiff further alleges that "the Board acted illegally, arbitrarily and capriciously, and in abuse of its discretion, in that: (a) it failed to recognize or set forth any legally cognizable rationale for the continuation of the severe development limitations imposed by the R-20 regulations; (b) it failed to recognize the requested zone change was in total conformity with the City's comprehensive plan; (c) it failed to recognize that the Board's actions relative to surrounding property have restricted development of the property to special exception uses; and (d) the current R-20 development rights are so limiting as to amount to a confiscation of the plaintiff's property." (Appeal, ¶ 13).
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v. ZoningBoard of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
Aggrievement
"Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." (Citation omitted; internal quotation marks CT Page 4327 omitted.) Med-Trans of Connecticut, Inc., v. Dept. of Health Addiction Services, 242 Conn. 152, 158, 699 A.2d 142 (1997). An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991).
In the present case, the plaintiff alleges that it owns the property located at 778 Long Ridge Road. (Appeal, ¶ 1). The plaintiff further alleges that it unsuccessfully applied to the Board "for a change in the Zoning Map, as it applied to its property at 778 Long Ridge Road, from R-20 to R-10." (Appeal, ¶ 7, 10). Therefore, the plaintiff has pleaded aggrievement. Donald Gary, a principal in the plaintiff firm, 778 Long Ridge Road Associates Limited Partnership, testified under oath before this court on February 5, 1998, and a warranty deed for the subject property was offered into evidence. (Plaintiff's Exhibit 1). This court made a finding of aggrievement on the record.
Timeliness and Service of Process
General Statutes § 8-8 (b) provides in relevant part: "The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
Subsection (e) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The plaintiff alleges that "[n]otice of the Board's decision was published in the Advocate on July, 12, 1996." (Appeal, ¶ 11; ROR, Item 14). Service of process was made on the chairwoman of the zoning board and on the town and city clerk on July 25, 1996.
This court finds that this appeal was commenced in a timely fashion by service of process upon the proper parties.
A zoning board acts in its legislative capacity when it renders a decision on an application for a change in zone district. Burnham v.Planning Zoning Commission, 189 Conn. 261, 265, 455 A.2d 339 (1983). "[L]egislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the [board] acted arbitrarily or illegally." (Internal quotation marks CT Page 4328 omitted.) Protect Hamden/North Haven from Excessive Traffic Pollution,Inc. v. Planning Zoning Commission, 220 Conn. 527, 543, 600 A.2d 757
(1991). "[I]t is not the function of the court to retry the case. Conclusions reached by the [board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of, fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. . . ." (Citation omitted; internal quotation marks omitted.) Protect Hamden/North Haven fromExcessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 542-43; Burnham v. Planning Zoning Commission, supra, 189 Conn. 265. "Courts will not interfere with [the board's] legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . Within these broad parameters, [t]he test of the action of the [board] is twofold: (1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in [§] 8-2." (Citations omitted; internal quotation marks omitted.) ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 543-44. "This broad legislative discretion applicable to the approval of a zone change is equally applicable to the denial of a requested zone change. . . ." HomartDevelopment Co. v. Planning Zoning Commission, 26 Conn. App. 212,216, 600 A.2d 13 (1991).
"In the absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves. . . . A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with intention of promoting the best interests of the entire community." (Citations omitted; internal quotation marks omitted.) ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 551.
Article I, § I of the Stamford zoning regulations sets forth their purpose which includes, "to encourage the most appropriate use of land; to conserve and stabilize the value of property . . . to promote, health, safety and the general welfare; and to that end to designate, regulate and restrict the location and use of buildings . . . to regulate and limit the height, number of stories and size of buildings and other structures hereafter erected or altered. . . ." The purpose of Stamford's CT Page 4329 zoning regulations generally follows the statement of purpose in General Statutes § 8-2. Section 8-2 also provides that "[s]uch regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses. . . ."
In the present case, the Board did not issue a written decision assigning grounds for its denial of the plaintiff's application. "[T]he failure of the zoning agency to give such reasons requires the court to `search the entire record to find a basis for the commission's decision.'" Id., 544.
This court has reviewed the entire record and finds that concern was expressed over the precedent potential that a zone change for this property might create. Board member Heftman expressed concern for "the other side of Long Ridge Road," while acknowledging the plaintiff's argument that the two sides of the road are different. Ms. Heftman noted that the "other side" is much more residential than the side the plaintiff's property is located on, but expressed concern that, "we are opening ourselves up for much more dense development on the other side . . . about a year and a half ago we were asked to grant a special exception for the real estate agencies and they used exactly the same argument that you are using at this moment. And I'm very concerned that we are signing the death warrant of this end of Long Ridge Road." (ROR, Item 13, p. 33; see ROR, Item 17: map of subject area).
A property owner from the "other side" of Long Ridge Road, Ann Vasca, spoke at the hearing. Although Ms. Vasca appeared to support the plaintiff's application and stated that the plaintiff's property "is so different . . . you're not going to disrupt or do any damage," she also stated, "[n]ow as far as residential goes, it [has] slowly been eroded as a truly quiet peaceful residential type area. It's beautiful yet because we are kind of screened and down and behind and it's a beautiful spot." (ROR, Item 13, p. 40-41).
At the hearing, Board member Consentini stated, "I think the original concept at one time of Long Ridge being totally developed has not really been borne out too much. The areas across the street have remained primarily residential with the exception of that CD. And in fact, if you were in some of the streets here, you wouldn't even — you would think you were lost someplace in New York State or North Stamford. . . . Long Ridge is very different . . . from say what happens on High Ridge." (ROR, Item 13, p. 37).
Additionally, Ms. Consentini noted that the amount of property that would be covered with the plaintiff's two buildings would be "considerably CT Page 4330 more of that site than many of the other contiguous developments would be covering." (ROR, Item 13, p. 26). The plaintiff's attorney, Mr. Hennessey, responded by attempting to distinguish the Xerox property which is zoned CD. Ms. Consentini, referring to the plaintiff's property responded, "this is a small site. It is a small site." (ROR, Item 13, p. 26).
Although Stamford's principal planner, Norman Cole, found that the precedent potential was "relatively small," he did note that there would be a "slight advantage" for the property immediately to the south of the plaintiff's property, the "Scinto property," to seek a change to R-10 zoning. (ROR, Item 9; see ROR, Item 17). While the Planning Board unanimously recommended approval of plaintiff's request to rezone, Mr. Cole also noted that, "[t]he Zoning Board must determine to its satisfaction that . . . no adverse precedent is established inviting other properties to skirt the established special exception standards within single family districts." (ROR, Item 9).
After the public hearing was closed, there was "considerable discussion about the precedent set by the proposed map change." (ROR, Item 11: Minutes of Zoning Board Regular Meeting, dated July 8, 1996). Board member Consentini "expressed concern for the larger area explaining that this area gives a bucolic impression and is a gateway to impressive homes." (ROR, Item 11). Board member Heftman said, "the regulations were changed for valid reasons and that residential neighborhoods are being lost to commercial development." (ROR, Item 11). Board member Kapiloff stated that she "did not want to see the chipping away of Long Ridge Road." (ROR, Item 11).
The Board could reasonably have relied on the comments of Ms. Vasca and the comments of Board members Heftman and Consentini regarding the residential nature of the "other side" of Long Ridge Road in denying the plaintiff's application. Ms. Consentini stated that she had examined the surrounding area including the "broader neighborhood." (ROR, Item 13, p. 24). "[T]he members of the board are entitled to take into consideration whatever knowledge they acquire by personal observation." Burnham v.Planning Zoning Commission, supra, 189 Conn. 267.
This court rejects the plaintiff's argument that the current R-20 development rights are so limiting that they amount to a confiscation of the plaintiff's property. In the present case, the plaintiff is seeking a zone change which would provide approximately an additional 8,000 square feet of development potential. At the hearing, Board member Consentini questioned whether any state regulation would prevent a day care center from occupying a building of "9,940 square feet," the size of the development allowed under R-20 zoning. Mr. Gary, a principal CT Page 4331 in the plaintiff's firm, responded, "there would be no prohibition, but it would not meet the optimal standards that the day care center people would like to have in order to be most efficient in running their facility." (ROR, Item 13 p. 26-27). Mr. Gary's own statement negates the claim that the present zoning standards amount to a confiscation of the property. While R-20 zoning may not permit optimal development, it does not preclude development and "permitted use to which it can reasonably be put. . . ." Smith v. Milford Planning Zoning, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 045023 (October 28, 1994, Curran, J.) (12 Conn. L. Rptr. 590). Although a larger facility may make it easier for the plaintiff to find a day care tenant and may be more profitable, "[t]he financial effect on a particular owner must be balanced against the health, safety and welfare of the community." (Internal quotation marks omitted.) Chevron Oil Co.v. Zoning Board of Appeals, 170 Conn. 146, 151, 365 A.2d 387 (1976). "The maximum possible enrichment of a particular landowner, however, is not a controlling purpose of zoning." Primerica v. Planning ZoningCommission, 211 Conn. 85, 98, 558 A.2d 646 (1989).
The plaintiff cites Smith v. Milford Planning Zoning, supra,12 Conn. L. Rptr. 590, in support of its arguments. The Smith case is distinguishable. There, the court found that the defendant Planning and Zoning Board's denial of the plaintiff's application for a zone change was arbitrary. The property owner sought a change from residential zoning to general business zoning. The court found that the property was overwhelmingly impacted by the Wilbur Cross Parkway and its new interchange, and the property was such that it would "never be developed for residential purposes." Id., 592. In the present case, the issue is size, not use. Assuming approval by the ZBA, the plaintiff can develop, but wants approximately 8,000 square feet more than R-20 zoning allows.
This court concludes that the record reasonably supports the denial of the plaintiff's application for a zone change. The Board's concern regarding the precedent potential of granting this rezoning request was supported by comments of Board members who have observed and are familiar with the area, comments of a neighbor, and Mr. Cole's conclusion regarding the Scinto property. The Board's concern and subsequent denial of the plaintiff's application was in accord with the comprehensive plan and police powers enumerated in General Statutes § 8-2. "If any reason culled from the record demonstrate[s] a real or reasonable relationship to the general welfare of the community, the decision of the [board] must be upheld." (Internal quotation marks omitted.) Cicero v.Windsor Planning Zoning Commission, Superior Court, judicial CT Page 4332 district of Hartford-New Britain at Hartford, Docket No. 505454 (February 8, 1993, Sheldon, J.), quoting Parks v. Planning ZoningCommission, 178 Conn. 657, 662-63, 425 A.2d 100 (1979). The Board did not act arbitrarily, illegally or in abuse of its discretion. Accordingly, the plaintiff's appeal is dismissed.
KARAZIN, J.