[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Landmark Development Group, LLC (Landmark), appeals from the decision of the defendant, the zoning commission of the town of East Lyme, denying an application for an amendment to the zoning regulations. For reasons hereinafter stated, the decision of the zoning commission is affirmed.
 BACKGROUND
The plaintiff contracted to purchase an interest in several contiguous properties in the town of East Lyme, which were zoned as RU-120.[1]
Prior to June 4, 1999, the plaintiff met with the first selectman for the town of East Lyme and disclosed the plaintiff's plans to develop the properties for mixed uses including a golf course, or in the alternative, to develop the properties as a residential subdivision. On May 21, 1999, the plaintiff filed an application for changes in the text of the applicable zoning regulations. The proposed modifications would have allowed the plaintiff to construct a retirement village, a golf course, and a resort center on the property. Shortly after the plaintiff filed its application with the defendant, the defendant proposed, on its own motion, to amend the zoning regulations applicable to the RU-120 district to further restrict development of properties within that district (proposal). The effect of the defendant's proposal was to preclude both the plaintiff's proposed mixed use golf course and its alternative residential subdivision project. After a hearing, the defendant's proposed amendments were approved making the district an RU-200/Greenway District.[2] (Greenway amendments). CT Page 6430
On August 27, 1999 and September 6, 1999, the defendant published a legal notice in The Day, a local newspaper, that it would hold a public hearing on the plaintiff's application. On September 9, 1999, the defendant opened and closed a public hearing on the plaintiff's proposal. After the close of the public hearing, the defendant voted to deny the plaintiff's proposal. On September 15, 1999, the defendant published the notice of its decision denying the plaintiff's proposal.
 JURISDICTION
General Statutes § 8-8 governs an appeal from the decision of a zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
Aggrievement
"The question of aggrievement is essentially one of standing."DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991). "The burden of demonstrating aggrievement rests with the plaintiff . . . The question of aggrievement is one of fact to be determined by the trial court. . . ." (Citation omitted.) Zoning Board of Appeals v. Planning Zoning Commission, 27 Conn. App. 297, 300-01, 605 A.2d 885 (1992). "[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192,676 A.2d 831 (1996). Our Supreme Court has previously determined that the owner of a contract to purchase property has a sufficient interest in the property to be aggrieved and have standing to appeal an agency decision adverse to its specific interest in the property. Fletcher v. Planning Zoning Commission, 158 Conn. 497, 502-03, 264 A.2d 566 (1969).
In this appeal, the plaintiff alleges that it is statutorily aggrieved by the decision of the defendant. The plaintiff alleges it is aggrieved pursuant to General Statutes § 8-8 and § 8-9. It further alleges that it has a "specific, personal and legal interest in the outcome of this case.
At trial, the plaintiff submitted testimony which showed that it owns property affected by its application and has options to purchase other properties which are affected by its application. At trial, the plaintiff also submitted testimony which established that it has a specific, personal, and legal interest in the property which is adversely affected CT Page 6431 by the defendant's denial of its application to amend the zoning regulations. The court, therefore, finds that the plaintiff is aggrieved by the decision of the defendant to deny its application.
Timeliness and Service of Process
General Statutes § 8-8(b) provides in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8(b).
The record contains an affidavit of publication, attesting that notice of the defendant's decision was published on September 15, 1999, in The East Lyme Tymes. On September 29, 1999, this appeal was commenced by service of process on the chairman of the planning and zoning commission and the town clerk for the town of East Lyme. Accordingly, the court finds that this appeal was commenced within fifteen days of the publication of the decision, as is required under General Statutes §8-8(b), and service of process was commenced in a timely manner upon the proper parties.
 DISCUSSION
As previously set forth, the defendant denied the plaintiff's application to amend the zoning regulations applicable to the RU-120 district. The defendant, in the minutes of its regular meeting of September 9, 1999, stated that it denied the plaintiff's application because it was not "in keeping with the authority granted to the Commission and it is also not in keeping with the purposes as outlined in the regulations."
The plaintiff appeals the denial on the following grounds: (1) The defendant acted illegally, arbitrarily, capriciously and in abuse of its discretion because it failed to file the plaintiff's proposal with the town clerk as required by General Statutes § 8-3(a);[3] (2) The defendant's decision was based on a change in the zoning regulations which occurred after the plaintiff submitted its application; (3) The defendant's decision to deny the plaintiff's application failed to state legally sufficient reasons for its denial of the plaintiff's application; and finally, (4) The defendant failed to consider the factors it was required to assess in denying the plaintiff's application to amend the zoning regulations. CT Page 6432
A. Whether the defendant failed to file a copy of the proposed amendments with the town clerk as is required by General Statutes § 8-3(a).
This court has previously emphasized that: "Where there is no substantial evidence to the contrary, it must be concluded that the plaintiff has failed in [its] burden of proof that the notice of the public hearing was not filed for public inspection as required by [General Statutes] § 8-3(a). Public officials are presumed to have done their duty until the contrary appears." Goyette v. Lebanon Planning ZoningCommission, Superior Court, judicial district of New London at Norwich, Docket No. 112654 (January 21, 1999, Purtill, J.T.R.). Although the plaintiff claims that the defendant failed to file a copy of the plaintiff's proposal with the town clerk, and is not claiming that the defendant failed to file a copy of the notice of the public hearing for inspection, the same legal principle applies in this case. At trial, the defendant presented testimony which indicates that the proposal was filed with the town clerk in a proper manner. A review of the record indicates that the plaintiff has failed to submit any evidence to prove that its proposals were not filed by the defendant. The presumption, therefore, is that the application was properly filed. Therefore, the plaintiff's appeal will not be sustained on this ground.
B. Whether the defendant was required to assess the validity of the plaintiff's application based solely on the zoning regulations in effect at the time the plaintiff filed its application.
The plaintiff next argues that the decision of the defendant to deny its application was arbitrary, capricious, and in an abuse of the defendant's discretion because the defendant assessed its application under the standards set forth in the Greenway amendments adopted by the defendant after the plaintiff filed its application. The plaintiff claims that the decision of the defendant violates the mandates of General Statutes § 8-2h, is improper and that its appeal should be sustained on this basis. The court disagrees with the plaintiff.
When acting on an application for an amendment to a zoning regulation, the defendant is acting in its legislative capacity. Samperi v. Planningand Zoning Commission, 40 Conn. App. 840, 848, 674 A.2d 432 (1996). When acting in its legislative capacity, a commission has broad discretion and is entitled to take into consideration facts learned through personal knowledge or observation in order to develop responsible planning for the present and future development of the community. Kaufman v. ZoningCommission, 232 Conn. 122, 150, 653 A.2d 798 (1995). "This broad legislative discretion applicable to the approval of a zone change is equally applicable to the denial of a requested zone change." HomartCT Page 6433Development Co. v. Planning Zoning Commission, 26 Conn. App. 212,216-17, 600 A.2d 13 (1991).
A review of the record indicates that the defendant reviewed the plaintiff's application as if the subject properties still existed in the RU-120 zone. The record contains a letter from the East Lyme planning commission which recommends the denial of the plaintiff's application because 1) the amendments are inconsistent with the 1987 Plan of Development and the area "known as RU-120 district has been specifically identified . . . as possessing, `severe constraints for development because of steep slopes and bedrock soils.' Adding golf courses as a permitted use in this particular area is in direct conflict with the general policy that future development be directed toward `areas most suited for use and away from area with serious natural resource limitations such as poor soil, steep slopes, and flood hazard.' Such use would certainly result in increased erosion and runoff into the Niantic River." "Any proposals for Elderly Housing in existing residential zone should follow the procedures and standards recently adopted for the SU-E district."[4]
The record also contains a memorandum from William Mulholland, the town zoning official, which cautions that the plaintiff's proposal must be considered under the regulations affecting the RU-120 district. A review of the transcript from the public hearing reveals that there was a discussion among commissioners Formica, Dwyer, and Weber which indicates that they were aware that a golf course was not a permitted use in the RU-120 district and that the RU-120 factors applied to the application before it.
At the hearing, the commissioners also heard testimony on the uses permitted in the RU-120 district. In the RU-120 district, the permitted uses were agricultural, forestry, veterinarian, nursery or greenhouse, typical accessory uses, customary incidental uses, and the building of a single family home. In addition, at the regular hearing, where the defendant debated the plaintiff's proposal, commissioner Bulmer indicated that the application should be looked at under the provisions of the RU-120 regulations.
As the plaintiff argues, however, the record also reveals that the defendant assessed the plaintiff's application with due consideration given to the reasons it decided to approve the Greenway amendments which also affect the plaintiff's property. Based on Homart Development Co. v.Planning Zoning Commission, supra, 26 Conn. App. 216-17, the defendant's references to the Greenway amendments and the reasons for their approval were, however, proper. CT Page 6434
In Homart, the Appellate Court determined that a land use commission was not required to decide an application for an amendment to a zoning regulation based on the zoning regulations in effect at the time the application was filed. Id., 218. The court stated that when a commission is deciding on whether to amend the zoning regulations it is acting in its legislative capacity and, therefore, General Statutes § 8-2h[5]
is inapplicable to its decision. Id. The court explained that General Statutes § 8-2h was applicable where an application seeks to utilize land in a manner permitted under regulations existing at such time as an application is filed. Id. The court emphasized that a zoning authority is then acting in an administrative capacity to assess the application according to the regulations in effect at the time the application is filed. The court concluded, however, that § 8-2h was not "intended to require the approval of request for zone reclassification or otherwise to diminish the legislative capacity of a zoning authority with respect to such request." (Emphasis in original.) Id.
Here, the defendant was not reviewing the plaintiff's application for a use that was permitted under the RU-120 zoning regulations. The defendant was assessing the plaintiff's application that sought to amend the zoning ordinances, accordingly, the defendant was acting in its legislative capacity. As General Statutes § 8-2h does not apply, the defendant was not required to assess the plaintiff's application based solely on the zoning regulations in existence at the time of the filing of the application. The defendant was free to decide the application for the zoning amendment under the regulations which were in effect at the time it rendered its decision.
The court concludes, therefore, that although the defendant did consider the reasons for the recent passage of the Greenway amendments, there is sufficient evidence in the record to support the conclusion that the defendant based its determination on the RU-120 regulations. Therefore, the court will not sustain the plaintiff's appeal on this ground.
C. Whether the denial of the plaintiff's application was arbitrary, capricious, or in an abuse of the defendant's discretion.
The plaintiff also claims that the defendant's decision to deny its application for amendments to the zoning regulations was arbitrary, capricious, and in an abuse of discretion because the defendant failed to state adequate reasons for the denial of the plaintiff's application, it failed to assess the application under the factors stated in General Statutes § 8-2, and it failed to consider the town's comprehensive plan. CT Page 6435
"The enactment of zoning ordinances is a legislative function, which the court may not disturb unless the commission acted arbitrarily or illegally." Northeast Parking, Inc. v. Planning Zoning Commission,47 Conn. App. 284, 292, 703 A.2d 797, cert. denied, 243 Conn. 969,707 A.2d 1269 (1998). "Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for change." Protect Hamden/North Haven from ExcessiveTraffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,543, 600 A.2d 757 (1991). When acting in such a legislative capacity, the decisions "reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. . . ." (Brackets in original.) West Hartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 498, 513, 636 A.2d 1342 (1994).
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Brackets in original.) Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 208, 658 A.2d 559 (1995). "The principle that a court should confine its review to the reasons given by a zoning agency does not apply to any utterances, however, incomplete, by the members of the agency subsequent to their vote. It applies where the agency has rendered a formal, official, collective statement of reasons for its actions." Protect Hamden/North Haven from Excessive Traffic Pollution,Inc. v. Planning Zoning Commission, supra, 220 Conn. 544. "Where a zoning board . . . does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision." Bloom v. Zoning Board of Appeals, supra, 208.
The defendant stated that it denied the plaintiff's application because the amendments were not "in keeping with the authority granted to the Commission and it is also not in keeping with the purposes as outlined in the regulations." The issue before this court is whether that statement qualifies as a reason for the defendant's decision to deny the plaintiff's application.
A review of the defendant's statement upon the denial of the plaintiff's application reveals that the defendant did not articulate anything which was "pertinent to the considerations the authority was required to apply pursuant to the zoning regulations." Giarrantano v.Zoning Board of Appeals, 60 Conn. App. 446, 452, 760 A.2d 132 (2000). The CT Page 6436 defendant's statement may be construed as merely stating that its decision was made in keeping with the authority granted to it under General Statutes § 8-2 and in keeping with the zoning regulations for the town of East Lyme. The statement does not indicate which aspects of General Statutes, § 8-2 or which of the town's zoning regulations, were advanced by the denial of the plaintiff's application. Therefore, this court finds that the defendant has failed to give a reason for its decision.
In Paige v. Town Planning Zoning Commission, 235 Conn. 448, 464,668 A.2d 340 (1995), the court observed that a "zoning commission's failure to state on the record the reasons for its actions, in disregard of General Statutes § 8-3, renders appellate review more cumbersome, in that the trial court must search the entire record to find a basis for the commission's decision . . . [W]e further stated that [i]f any reason culled from the record demonstrates a real or reasonable relationship to the general welfare of the community, the decision of the commission must be upheld. . . ." (Brackets in original; emphasis in original.)
"Courts will not interfere with . . . local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . Within these broad parameters, [t]he test of the action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan and (2) it must be reasonably related to the normal police power purposes enumerated in 8-2." (Brackets in original; citations omitted; internal quotation marks omitted.) Protect Hamden/North Havenv. Planning and Zoning, supra, 220 Conn. 543-44.[6] "Amendments to zoning regulations, at least by implication, are required by General Statutes § 8-2 to be in harmony with the comprehensive plan. . . . The comprehensive plan consists of the zoning regulations together with the zoning map which has been established pursuant to those regulations."Collins v. Planning Zoning Commission, Superior Court, judicial district of New London, Docket No. 546818 (September 1, 1999, Purtill,J.T.R.); see Pierrepont v. Zoning Commission, 154 Conn. 463, 466 (1967) (consideration of zoning map together with the current uses of the property and the applicable zoning regulations cannot be considered inconsistent with the comprehensive plan).
1. Whether the defendant considered the comprehensive plan.
There is evidence within the record that the commissioners considered the effect of the plaintiff's proposed zoning amendments on the comprehensive plan for the town and reasonably determined that the proposed amendments were not in conformance with the plan. At the regular hearing of the defendant held September 9, 1999, commissioner Formica stated that "in the previous district [RU-120], a golf course was not CT Page 6437 allowed nor was elderly housing. So, [the Greenway amendments] eliminated most of the uses that were there commercially and did not see fit to add a golf course. So, I don't see how this fits in [with] what we've done certainly as a commission." At the same hearing; commissioner Dwyer noted: "I'm willing, I have to go along with the Greenway Conservation District. That was our intent to preserve and protect the specific area of the Town because of a high conservation value, because of the natural beauty and ecological significance. . . ." Commissioner McLaughlin added in response that: "I have to agree. . . . The Board spent a lot of hours working on changing the RU-120 Zone to a Greenway Conservation District to upgrade it for a conservation district. Then we also adopted a SU-E District for Elderly Housing and we spent a lot of time on that also."
At the public hearing there was also evidence before the defendant relating to the comprehensive plan for the town. At that hearing, commissioner McLaughlin stated that the Town had already created an SU-E district for elderly housing. Commissioner Dwyer stated that: "When we eliminated the [RU-120], it became a Greenway. . . . A golf course seems to go against that philosophy in my mind." Finally, Mulholland observed: "I think the question is whether the proposal before us is in keeping with what the Commission intends for the area."
The court therefore finds that the defendant examined the effect of the plaintiff's proposed amendments on the zoning regulations, which were applicable to the area, and assessed the plaintiff's application in connection with the defendant's planned development scheme for the town. The court also finds that the defendant's decision was reasonably supported by the record in determining that the plaintiff's application was not in conformance with the town's comprehensive plan because the plaintiff's proposed amendments would require the defendant to allow substantial development in an area of the town the defendant sought to protect from overdevelopment because of its effects on the ecology of the area.
The court also finds that the defendant's decision to deny the application, which would have allowed for the creation of an elderly housing development, was equally supported by the record. The record shows that the defendant had just created an SU-E district, to provide for elderly housing; thus, the defendant had considered and provided for this use in an area other than the plaintiff's property in the town's comprehensive plan. There was support, therefore, for the defendant's determination that the plaintiff's application, with respect to providing for additional elderly housing, was not in conformance with the comprehensive plan, because the defendant had already created an elderly housing zone in the town. CT Page 6438
2. Whether the defendant was justified in denying the plaintiff's application under General Statutes § 8-2.
There is evidence in the record that also demonstrates the commissioners properly acted pursuant to their police powers, as provided by General Statutes § 8-2, when they denied the plaintiff's proposal to amend the zoning regulations. The commissioners considered the ecological effects of clear cutting on the area for the golf course, the natural characteristics of the area and the area's suitability for development. At the public hearing, the commissioners also heard testimony expressing a concern about allowing the property to be used as a golf course because of the effects of irrigation on the property, the high amount of fertilizer the golf course would require, and the possibility of runoff from the property into the Niantic River. The defendant also heard from Mr. Dunn who stated that he and Marvin Schutt: "worked together and obtained about 300 signatures of people throughout the Town that are in favor of protecting this land which was formerly zoned RU-120 and is now the Greenway Conservation District. And in speaking with a lot of these people that signed his letter, the consensus is that we'd like to see greater protection of the land in this area."
Based on the evidence before the defendant, this court finds that the defendant considered the factors set forth in General Statutes § 8-2
and exercised its statutory police powers in deciding to deny the plaintiff's application. The court, therefore, finds that the decision to deny the plaintiff's application was not arbitrary, capricious, and in abuse of discretion because there is substantial evidence in the record to demonstrate that the defendant was aware of the applications potential impact on the town's comprehensive plan and that it considered the factors set forth in General Statutes § 8-2. Accordingly, the court will not sustain the appeal on this ground.
 CONCLUSION
For the foregoing reasons, the decision of the defendant zoning commission is affirmed.
Joseph J. Purtill Judge Trial Referee